[S. F. No. 11688. In Bank.—December 28, 1927.]

GEORGE J. IVANCOVICH, Appellant, v. NONIE BERTOSSI, as Executrix, etc., Respondent.

[1] CONTRACTS—SALE OF WINE—INJURY BY BLENDING—FINDINGS— SUFFICIENCY OF EVIDENCE.—In this action to recover damages for the alleged breach of a certain contract for the purchase and sale of wine, it is held that the evidence was sufficient to justify the findings of the trial court that the wine before blending by plaintiff's assignor was sound and free from commercial defects and that its inferior quality and unmerchantability after it was blended was due entirely to plaintiff's assignor and his employees in the blending of it.

[2] ID.—WARRANTY—TIME.—In such a case, the claim of the plaintiff that as the contract of sale warranted the wine to be sound and free from any commercial defects, the warranty referred to the time of delivery and not simply to the time of purchase, cannot be maintained, where, although the wine may not have been actually delivered to the purchaser so as to entitle the seller to demand payment therefor, by agreement plaintiff's assignor took possession of the wine for the purpose of preparing it for resale and shipment, and while in such possession and as a result of his treatment of the wine it was caused to deteriorate and spoil.

[3] ID.—DAMAGES—FINDINGS.—In such a case, where the court found that upon plaintiff's assignor's refusal to accept and pay for the wine the seller was compelled to sell the wine, and did so at a loss of more than ten thousand dollars, which amount the court offset against the payment of ten thousand dollars made by the purchaser on the execution of the contract, there was no error in failing to fix a definite amount in which the seller was damaged.

---

(1) 35 Cyc., p. 233, n. 99.   (2) 35 Cyc., p. 421, n. 59.   (3) 4 C. J., p. 1059, n. 1; 34 Cyc., p. 762, n. 3.

APPEAL from a judgment of the Superior Court of Sonoma County. Ross Campbell, Judge. Affirmed.

The facts are stated in the opinion of the court.

Edwin T. McMurray for Appellant.

Geary & Geary and James L. Atteridge for Respondent.

CURTIS, J.—This action was brought to recover damages, which the complaint alleges the plaintiff's assignor sustained by the breach of a certain contract for the purchase and sale of two lots of wine described in said contract. This contract was dated October 7, 1918, and was signed by Angelo Cassani, the then owner of the wine, who was also the original defendant in this action. Upon his death, subsequent to the commencement of this action, the executrix of his will was substituted as defendant in his stead. By this contract Cassani agreed to sell G. B. Cella, of New York City, two lots of wine "in good condition and without commercial defects," one consisting of about eighty-two thousand gallons then in the Mt. Olivet winery, belonging to Cassani, and the other lot consisting of about eighty-seven thousand gallons, then in his Santa Rosa winery, both of said wineries being located in Sonoma County, in this state. The price of the wine was fifty-one cents per gallon for that in the Mt. Olivet winery and fifty cents per gallon for that in the Santa Rosa winery. The purchaser agreed to pay for the wine "f. o. b." at the respective wineries, "invoice and bill of lading to be sent and paid at sight in San Francisco, California." Ten thousand dollars was paid on the contract at the signing thereof, to be applied on final shipment. The wine was all to be taken within ninety days from date of contract. Barrels, revenue stamps, and lumber were to be paid for by purchaser, who was also to provide all necessary labor for filtering wine, in case purchaser desired same to be filtered. The wine was to be loaded on board cars at depot, ready and complete for shipment by seller. Before the signing of the contract Cella visited both wineries and took samples of all the wine contained therein, and the contract of sale provided that the quantity of the wine sold should be

of a quality "same as sample submitted." On January 20, 1919, this contract was sold and assigned by Cella to Louis H. Mooser, Jr., doing business under the name of Mooser & Company of San Francisco, who thereafter carried on with Cassani all transactions regarding the wine covered by the contract. Louis H. Mooser, Jr., prior to the commencement of this action assigned his rights of action on said contract to the plaintiff herein. The foregoing facts were set forth in plaintiff's complaint together with the further facts that said Mooser within the ninety days provided in said contract, as the limit within which said wine might be taken, had detailed tests made of said wine and that said tests showed that said wines and all portions of the same were not in good condition and were not without commercial defects, but, on the contrary, said wines were by said tests shown to contain volatile acids far in excess of the proportion or percentage which would permit the sale of the same in good condition, and in such proportion and percentage as would prevent the sale of said wines in good condition; that said Mooser for this reason rejected said wines and notified Cassani of his said refusal. It is then set forth in said complaint that on account of Cassani's refusal to comply with said contract said Mooser was damaged in various sums, including said sum of ten thousand dollars paid by Cella to Cassani at the execution of the contract and which amount Mooser had paid to Cella at the time of the assignment of the contract by Cella to Mooser. To this complaint the defendant Cassani filed an answer and cross-complaint in which he denied that there was any defect in the wine when sold or at any time thereafter until "said Mooser was permitted by this defendant to blend said wines, and otherwise manipulate and change said wines; that such manipulation and blending of said wines so made by said Mooser changed the said wines so that they were different in quality and composition from what they were when said Mooser took charge thereof, and any deterioration in the quality of said wines was occasioned solely by the acts of said Mooser performed in and about said wines." Cassani in his answer denied that Mooser was damaged by reason of any act on his part and alleged in his cross-complaint that by reason of Mooser's action in manipulating and blending the wine and thereby causing it to deteriorate, he was damaged in a sum largely in excess

of ten thousand dollars. The court found in favor of the defendant and rendered judgment that plaintiff take nothing by his said complaint, and that defendant recover her costs.

Practically the only point involved in this appeal is whether the findings are supported by the evidence. The following facts are disclosed by the evidence: The wine in question was manufactured and produced by Cassani in his two wineries in Sonoma County and was the entire output of these wineries for the year 1918. Cella, an experienced wine man from New York visited Cassani's wineries three or four times before entering into the agreement to purchase the wine. At these several visits he took samples of the wine from each of the tanks or vats in which it was stored. These he tasted and tested. Whether he "tested" the wine other than by tasting it is not clear from the record. After taking the samples and tasting and testing them he returned to Cassani's place of business and on December 17, 1918, entered into the agreement of sale, and paid the sum of ten thousand dollars on the purchase price. This contract he sold on January 20, 1919, to Mooser. Shortly after Mooser bought the contract from Cella, and before the wine was blended by Mooser, the latter directed Cassani to ship a carload of this wine from the Santa Rosa winery to Cella in New York. This shipment of wine, consisting of about six thousand gallons, was shipped to Cella at New York, and paid for by Mooser. No complaint was ever received by Cassani from Cella or from Mooser or from anybody else as to the character and quality of this wine so shipped by Cassani to Cella at New York City.

About February 4, 1919, Mooser sent men to the Santa Rosa winery to blend the wine. This took about a month. The wine in the Mt. Olivet winery was not blended, and it does not appear that Mooser ever made any objection that it was not up to the requirements of the contract. Mooser had the wine in the Santa Rosa winery analyzed by a chemist, and these analyses showed an excess of volatile acid which rendered the wine sour and unfit for beverage purposes. The action was tried some four years after the events happened and the witness who testified to procuring the samples stated that he procured the samples somewhere between the seventeenth day of December, 1918, the date of the contract of purchase, and the tenth day of March, 1919. As we have already

seen, the blending of the wine in the Santa Rosa winery began on February 4, 1919, and it took about a month to complete the work. The analyses of the wine were made on or about March 10, 1919. Cassani testified that Mooser sent a party to the winery to get samples of the wine and that this was after the wine had been blended. The trial court undoubtedly concluded from the evidence that these samples of wine were taken after the wine had been mixed and blended by Mooser, and we cannot say from the state of the record upon this subject that the trial court was not justified in arriving at this conclusion. There is no conflict, however, in the evidence that the wine in the Santa Rosa winery, after it had gone through the process of blending, was sour and of little commercial value for beverage purposes. The evidence is clear that the blending of the wine was done by Mooser and if there were any deleterious results therefrom Mooser himself was alone responsible therefor. The blending of the wine was for the purpose of making the whole output of the winery of a uniform color and quality and the process of blending consisted simply of pouring together the wine contained in two or more tanks or vats, and making one lot of the whole before it is drawn out again either into the vats or in barrels for shipment. While this process does not necessarily tend to deteriorate the wine, yet the evidence of experts produced at the trial was to the effect that in blending wines, there were a number of contingencies that might arise which would affect the quality of the wine after it was blended. As one witness said: "If your hose and other implements in the winery are not clean, if they are not thoroughly washed out, it will affect even a sound wine. The sound wine can be spoiled by using hose and material that are not cleaned or properly cleaned. But sound wine blended will remain a sound wine, but tanks in the winery differ." This same witness testified that a tank of unsound wine when blended with other wine in the winery might absolutely spoil the whole lot. While there was no direct evidence that any of the wine in the Santa Rosa winery was unsound before the blending process took place, the owner of the winery, Cassani, who was an experienced man, testified that he disapproved of mixing the white or muscat wine with the Zinfandel. It appears that practically all of the wine in the Santa Rosa winery was Zinfandel wine, but there was a

small lot of white or muscat wine in this winery. The testimony of Cassani as to this incident was as follows:

"Q. When you say blend and mix, you mean they dumped the wine from one tank into wine in another tank? A. Yes, they mixed it all up, you know. Q. That was for the purpose of making the type of wine that they wanted? A. Making one kind of wine; that is all. Q. I see. A. When they say they going to put in that white wine, I says, 'Gentlemen, I don't care for me what you doing, but you spoil the Zinfandel wine by putting in that.' Q. What did they mix with the Zinfandel? A. Yes, they did. Q. I say, what did they put in with Zinfandel? A. White wine, muscat, you see, that gave a bad smell; that is why I had to sell my wine cheaper to get rid of it."

There was testimony of experts produced by the plaintiff who testified contrary to the statement of Cassani, that the mixing of white or muscat wine with Zinfandel wine would spoil the latter. Yet the trial court was not bound to accept their evidence, and it may well have rejected their statements and concluded in accordance with the views of Cassani that by mixing or blending the two kinds of wine the whole was spoiled. There was ample evidence to show that the wine was sound and free from commercial defects on the seventeenth day of December, 1918, when the contract of sale was entered into. Both Cassani and the witness Buzzi, who had worked for Cassani in making the wine, and who also was employed by Mooser to help blend the wine, testified that the wine was in good condition when sold. Cella, the purchaser, only a day or so before he purchased the wine tasted the wine and took samples of it for testing. A short time after the purchase, but after Mooser had obtained an assignment of the contract, a carload of the wine was shipped to Cella at New York City, and no objection was ever made as to the quality of the wine shipped. This evidence was sufficient to justify the trial court in finding that the wine before blending was sound and free from commercial defects. It is admitted that after the wine was blended it was sour and unfit for beverage purposes. [1] When we consider the evidence of Cassani that mixing the white or muscat wine with the Zinfandel wine would spoil the mixture, together with the other evidence in the case as to the unfavorable results that might result from the blending of wine by the use of a hose or

other implements not properly cleaned, we are of the opinion that it was not an unreasonable conclusion or inference for the trial court to draw that the inferior quality of the wine and its unmerchantable character after it was blended was due entirely and solely to the acts of Mooser and his employees in the mixing or blending of the wine. The evidence, therefore, was sufficient to sustain and justify the findings of the trial court in favor of the respondent.

[2] Appellant also contends that the findings do not support the judgment. In this connection he claims that as the contract of sale warranted the wine to be sound and free from any commercial defects this warranty referred to the time of delivery and not simply to the time of purchase. Appellant's position appears to be that although the wine may have been sound when purchased, yet if it were not in that condition at the time it was to be delivered under the contract the warranty had not been kept. There is no merit in this contention in view of the facts of this case. While there may not have been an actual delivery of the wine under the contract, so as to entitle the seller to demand payment therefor, yet by an agreement of the parties Mooser took possession of the wine for the purpose of preparing it for resale and shipment, and while in such possession and as a result of his treatment of the wine it was caused to deteriorate and spoil. The inferior quality of the wine, due to the acts of Mooser, cannot be chargeable to the respondent. The fact that the wine was not at the time fixed for delivery up to the standard required by the contract of sale, was due entirely to the acts of Mooser. The appellant cannot, therefore, complain of the failure of the wine to meet the requirements of the warranty at that time.

[3] Appellant also claims that the finding, under the allegations of the cross-complaint, that defendant was damaged in excess of ten thousand dollars by the failure of Mooser to accept and pay for the wine according to the contract was indefinite, and that "defendant is entitled to a judgment for the actual amount of damage suffered." The court found that upon Mooser's refusal to accept and pay for the wine, Cassani was compelled to sell the wine, and did so at a loss of more then ten thousand dollars, which amount the court offset against the payment of ten thousand dollars made by Cella to Cassani on the execution of the contract.

As Mooser had assigned his cause of action to the appellant, the trial court rightly concluded that a personal judgment for the amount of damage sustained by the respondent for the breach of the contract by Mooser would not lie against Mooser's assignee, the appellant herein, and refused to award such a judgment. But as the appellant had sought to recover the ten thousand dollars paid by Cella at the execution of the contract, the trial court did go into the merits of respondent's claim for damages and found that such claim was in excess of the said sum of $10,000, which appellant sought to recover from respondent. Appellant cannot complain that the court failed to fix a definite amount in which respondent was damaged, so long as the amount found was in excess of the amount which appellant was claiming from respondent, and which appellant would have been entitled to recover had not respondent sustained damages by reason of Mooser's failure to carry out the contract. Had the trial court found and fixed definitely the amount of damage sustained by respondent in excess of the sum of ten thousand dollars, neither the appellant nor the respondent would have been benefited by such a finding. Neither party can, therefore, complain of the court's failure to make such a finding.

A number of other objections to the judgment have been advanced by appellant in his brief, all of which have been considered by us, and after such consideration we are of the opinion that they are without merit. A detailed discussion of them would serve no useful purpose, as they involve matters of no special legal significance.

The judgment is affirmed.

Preston, J., Seawell, J., Langdon, J., Shenk, J., Richards, J., and Waste, C. J., concurred.